**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Jamie L. Melton,<br><br>Debtor. | C/A No. 10-05297-DD<br><br>Chapter 13<br><br>**ORDER** |

This matter is before the Court for a confirmation hearing on Jamie L. Melton's ("Debtor") chapter 13 plan. Debtor filed a plan on August 5, 2010 and an amended plan on October 5, 2010. An Objection to Confirmation of the Plan ("Objection") was filed by University Motor Company, Inc. ("Creditor") on August 23, 2010. Debtor responded to Creditor's Objection on November 11, 2010. Creditor also filed an objection to the interest rate set forth in Debtor's proposed plan on November 9, 2010, and Debtor responded on the same day. A hearing was held on November 15, 2010. Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

Debtor filed for chapter 13 relief on July 27, 2010. Debtor's Amended Plan proposes plan payments of $775 per month for a period of 60 months. Debtor's Schedule D discloses total secured debt of $147,713.00, comprised of a mortgage on her residence and a lien held by University Motors on a 2003 BMW 745L ("BMW"). Debtor's unsecured debt totals almost $100,000, approximately $75,000 of which is student loans.

Debtor is currently employed as a Director of Human Resources and has been for five years. She earns a monthly take home pay, after payroll deductions, of $4,177.00. After Schedule J expenses, she has monthly net income of $775.00. Debtor testified at the

confirmation hearing that she believes her continued employment prospects are good and that she anticipates a pay raise in January 2011. Debtor testified that the amount of her raise would depend on her job performance.

In June 2010, Debtor purchased the BMW from Creditor for a total purchase price of $22,295.00. The certificate of title for the BMW states that at the time of Debtor's purchase, the vehicle's odometer indicated actual mileage of 79,468 miles. Debtor traded in a 2002 Toyota Sequoia that she had previously purchased from Creditor and received a credit of $11,000, less the payoff of a lien on that vehicle. After an additional cash down payment and taxes and fees, the total amount Debtor financed for the purchase of the BMW was $16,332.00, plus 29.01 percent interest. Debtor agreed to repay this loan in monthly installments of $585.67; however, Debtor made no payments on the loan prior to filing her chapter 13 petition on July 27, 2010.

Debtor indicated that she purchased the BMW because she needed a "safer and more reliable form of transportation." Response to Creditor's Objection to Confirmation of the Plan, docket entry no. 27. Debtor testified at the hearing that she also purchased the BMW because she wanted to downsize from her SUV and spend less money on gas and maintenance.

Debtor testified that the reason she filed bankruptcy was the denial of a loan modification she had attempted to negotiate with Aurora Loan Services ("Aurora"), her mortgage creditor. Debtor stated that at the time of her purchase from Creditor, she had no indication from Aurora that her loan modification would be turned down, and therefore had no intention of filing bankruptcy. Aurora's proof of claim indicates that Debtor has not made a mortgage payment since September 2009 and that the total arrearage owed at the end of August 2010 was $16,657.57. Debtor's testimony was that she had agreed to a trial loan modification with Aurora

and had expected a permanent loan modification. Debtor did not introduce any documents in support of her testimony.

## CONCLUSIONS OF LAW

Creditor's Objection is twofold. First, Creditor argues that Debtor's plan is not proposed in good faith. Creditor claims that Debtor purchased the BMW in anticipation of filing bankruptcy and intended to alter the automobile payments through her chapter 13 plan from the outset. Creditor's second objection is to the interest rate set forth in Debtor's plan.

This Court has very recently discussed the good faith plan requirement in the context of chapter 13 confirmation hearings. *See In re Johnson*, No. 10-05019-DD, 2010 WL 4313402 (Bankr. D.S.C. Oct. 27, 2010). It is well-settled that this Court employs a totality of the circumstances analysis to determine whether a debtor has proposed a chapter 13 plan in good faith. This analysis requires a consideration of several factors, including:

> (1) the percentage of repayment creditors will receive; (2) the financial situation of the debtor; (3) the period of time over which creditors will receive payment; (4) the employment history and current and future employment prospects of the debtor; (5) the nature and amount of unsecured claims; (6) any previous bankruptcy filings of the debtor; (7) the honesty of the debtor in disclosing the facts of his case; (8) the nature of the debtor's pre-petition conduct giving rise to the case; (9) the dischargeability of the debtor in a chapter 7; and (10) any other extraordinary or unusual problems of the debtor.

*Johnson*, at *2 (citing *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986); *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982); *In re Allawas*, No. 07-06058-HB, 2008 WL 6069662, at *3 (Bankr. D.S.C. Mar. 3, 2008)). The Court's primary task in evaluating good faith is to determine whether the debtor's plan "represents an 'abuse of the provisions, purpose, or spirit' of Chapter 13." *Johnson*, at *2 (quoting *In re Allawas*, No. 07-06058-HB, 2008 WL 6069662, at *3). Debtor has the burden of proof on the issue of good faith and must demonstrate that the totality of the circumstances show her plan was proposed in good faith. *In*

*re Moroney*, 330 B.R. 527, 530 (Bankr. E.D. Va. 2005) (citing *In re Carpenter*, 318 B.R. 645, 648 (Bankr. E.D. Va. 2003)).

Through Debtor's proposed plan, unsecured creditors will receive approximately 2 percent of allowed claims. Much of the unsecured debt arises from student loans that will not be discharged in this case. Testimony at the hearing indicated that Creditor will be fully paid through the plan in approximately 30 months. Debtor has a stable job with a significant income and no expectation that her employment will not continue. At the time of the confirmation hearing, Debtor was current on payments to the chapter 13 trustee. All of these factors indicate that Debtor's plan was proposed in good faith.

Debtor had a previous chapter 7 bankruptcy case in 2005, which she testified was filed due to medical debt of over $15,000. In fact, Debtor and her son continue to have significant medical expenses. Debtor testified that her son takes medication costing $30 per month, and that he occasionally sees a doctor, with attendant charges for office visits. Debtor also has medical expenses of her own in excess of $200 per month; in fact, one of her prescriptions alone costs $200 per month. Debtor also has occasional doctor's visits. Despite all this, Debtor's Schedule J projects her medical and dental expenses at only $230.00 per month. Debtor seems to have underestimated her medical expenses. Additionally, Debtor testified that she spends about $50 each week on gas for her commute to work, yet she sets aside only $250 per month in her budget for all transportation expenses, including maintenance and repair bills. This suggests that Debtor's actual transportation expenses will be higher than projected.

Counsel for Creditor also drew attention to several inaccuracies and inconsistencies in Debtor's Schedules. For example, Debtor failed to report her 2009 tax refund in the amount of $1,868.00 on her Schedule I. Debtor listed a debt to Citifinancial for a deficiency in the amount

of $2,000 on her Schedule F, but Debtor testified at her confirmation hearing that she did not owe Citifinancial any money. Debtor also failed to list Badcock as a secured creditor on her Schedule D, but Debtor's amended plan provides for payment of $6 per month to Badcock. Creditor's counsel also pointed out some other inconsistencies in Debtor's schedules, including failure to list $75,000 of student loan obligations included on Schedule F in Debtor's Statistical Summary of Liabilities and failure to list charitable contributions listed on Schedule J at $40 per month on Debtor's Statement of Financial Affairs. These errors and inconsistencies, other than the failure to report the 2009 tax refund, reflect a certain inattentiveness to detail more than they reflect bad faith. The tax refund, however, is some evidence of over-withholding and suggests that Debtor may have additional disposable income.

Debtor has significant unsecured debt, consisting largely of student loans. Interest will continue to accrue on these loans while Debtor is in bankruptcy, meaning that Debtor will still have a significant amount of debt to repay once her chapter 13 plan has been completed. Additionally, Debtor was behind on her mortgage payments with Aurora at the time of her filing and is not current on post-petition mortgage payments. Debtor's plan proposed direct payments to Aurora beginning in September 2010, but she has not commenced making these payments. Debtor testified that while she had saved some money to catch up on her mortgage payments, her savings fall significantly short of the past-due amount. Debtor's monthly net income listed on Schedule J is the exact amount of her plan payments; as a result, Debtor will not have any additional money left over at the end of the month to help her catch up on her mortgage or for unexpected expenses.

Finally and significantly, Debtor never made any payments on the BMW loan before filing bankruptcy. Debtor purchased the BMW just over a month prior to the bankruptcy filing.

This Court has previously noted that, while not conclusive evidence of bad faith by itself, a debtor's purchase of a vehicle followed immediately by a bankruptcy filing can be evidence of bad faith. Debtor's purchase of a vehicle immediately prior to her chapter 13 filing is certainly some evidence of a plan proposed in bad faith.

Creditor states that the BMW is a luxury vehicle and suggests that the court infer bad faith from that fact. While the vehicle is certainly a nice used car, it is seven (7) years old and has been driven nearly 80,000 miles. New BMWs are correctly categorized as luxury vehicles, but used BMWs, especially those with significant mileage, often should not be similarly characterized. In fact, Creditor's representative testified that he had to spend about $3,000 on repairs to make the vehicle presentable for sale. The purchase of a used BMW is not dispositive of the issue of bad faith, just as the purchase of a new economy vehicle would not be dispositive of the issue of good faith.

Finally, Creditor asserts that it has seen an increase in customers filing bankruptcy soon after purchasing a car from it and that this indicates bad faith on the part of these debtors. As stated above, a bankruptcy filing soon after the purchase of a vehicle can be evidence of bad faith, but is not conclusive in and of itself. Instead, the debtor's other circumstances must be examined. Creditor's argument that Debtor's plan was proposed in bad faith simply because she purchased a vehicle from it immediately before filing bankruptcy is unavailing.

The Court concludes that Debtor's plan was not proposed in good faith. This is based on the fact that Debtor purchased the BMW immediately before filing bankruptcy and never made a payment to Creditor, failure to report the 2009 tax refund, failure to remain current on post-petition mortgage payments, and the failure to provide any documentation of the timing of Debtor's unsuccessful loan modification with Aurora and its impact on her decision to file

bankruptcy. The idea that the loan modification process was proceeding in favorable fashion and then suddenly ended in such a way as to require an immediate bankruptcy filing before the first automobile loan payment was made is not supported in any rational way by the evidence. Debtor has failed to satisfy her burden of showing that her plan was proposed in good faith. The Court therefore finds that Debtor's plan cannot be confirmed.

Creditor has also objected to the interest rate it receives under Debtor's proposed plan. This Court has previously rejected this Creditor's contention that it should receive more than South Carolina's presumptive interest rate of 5.25%. *See Johnson*, 2010 WL 4313402, at *4. While it is unnecessary to consider the proper interest rate for Creditor to receive here due to the denial of confirmation, the Court notes that the outcome of Creditor's objection to the proposed interest rate will be no different in the present case than it was in *Johnson.* Creditor is not entitled to receive more than 5.25 percent.

## CONCLUSION

For the reasons stated above, the Court finds that Debtor's plan was not proposed in good faith. As a result, confirmation of Debtor's Amended Plan is denied. A separate order will be entered concerning the filing of an amended plan.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**12/09/2010**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 12/10/2010